


**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2015 FEB -5  AM 8: 04
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

| | | |
|---|---|---|
| *Zachary A. Myers*<br>*Assistant United States Attorney*<br>*Zachary.Myers@usdoj.gov* | *Suite 400*<br>*36 S. Charles Street*<br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4848*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

December 5, 2014

Pat M. Woodward, Jr.
1783 Forest Drive #330
Annapolis, MD 21401

    Re:    <u>United States v. Jonathan M. Sutton, Criminal No. CCB-14-00495</u>

Dear Mr. Woodward:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by close of business on December 19, 2014, it will be deemed withdrawn.

    The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment which charges the Defendant with Conspiracy, in Violation of Title 18, United States Code, Section 371. The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

    a.    Two or more persons, agreed to commit an offense against the United States, namely violations of Title 18, United States Code, Sections 922(a)(6) and (g)(1), as charged in the indictment;

    b.    The Defendant was a party to or member of the agreement;

    c.    The Defendant joined the agreement or conspiracy knowing of its objective and intending to join together with at least one other conspirator to achieve that objective; and

        d.      At some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

### Penalties

3.      The maximum sentence provided by statute for the offenses to which your client is pleading guilty is as follows:

        a.      Imprisonment for not more than five (5) years, followed by a term of supervised release of not more than three (3) years and a fine of up to $250,000.

4.      In addition, the Defendant must pay $100 as a special assessment pursuant to Title 18, United States Code, Section 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order the Defendant to make restitution pursuant to Title 18, United States Code, Sections 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to Title 18, United States Code, Section 3572(d), the Court orders otherwise. The Defendant understands that if the Defendant serves a term of imprisonment, is released on supervised release, and then violates the conditions of supervised release imposed by the Court, the Defendant's supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

5.      The Defendant understands that by entering into this agreement, the Defendant surrenders certain rights as outlined below:

        a.      If the Defendant had persisted in a plea of not guilty, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

        b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

        c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses,

however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

        d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

        e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against the Defendant. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

        f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights the Defendant is giving up and about the facts of the Defendant's case. Any statements the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find the Defendant guilty.

        h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if the Defendant is not a citizen of the United States, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including defense counsel or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at Title 18, United States Code, Sections 3551-3742 (excepting Title 18, United States Code, Sections 3553(b)(1) and 3742(e)) and Title 28, United States Code, Sections 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.  This Office and the Defendant understand, agree and stipulate to the following Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt and to the following applicable sentencing guidelines factors:

   a.  The base offense level is twelve (12) pursuant to U.S.S.G. §2K2.1(a)(7).

   b.  Pursuant to U.S.S.G. §2K2.1(b)(1)(A), there is an increase of two (2) levels because the offense involved six (6) firearms.

   c.  Pursuant to U.S.S.G. §2K2.1(b)(5), there is a four (4) level increase because the Defendant engaged in the trafficking of firearms, in that the Defendant transported, transferred, and otherwise disposed of two or more firearms to another individual whose possession and receipt of the firearms the Defendant knew would be unlawful.

8.  This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon your client's apparent prompt recognition and affirmative acceptance of personal responsibility for your client's criminal conduct. This Office intends to make a motion pursuant to U.S.S.G. §3E1.1(b) for an additional 1-level decrease, assuming your client continues to acceptance of personal responsibility for your client's conduct up to, and through, sentencing. This Office may oppose any adjustment for acceptance of responsibility if your client (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about your client's involvement in the offense; (d) is untruthful with the Court, this Office or the United States Probation Officer; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw the plea of guilty.

9.  Thus, the final anticipated adjusted offense level is fifteen (15) after the anticipated adjustment for acceptance of responsibility.

10. The Defendant understands that there is no agreement as to the Defendant's criminal history or criminal history category, and that the Defendant's criminal history could alter the Defendant's offense level if the Defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11. This Office and the Defendant agree that, with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in Chapters 2, 3, 4 or 5 of the United States Sentencing Guidelines (other than those stated in ¶ 7, supra) will be raised or are in dispute.

## 18 U.S.C. § 3553(a)

12. This Office and the Defendant agree that both parties reserve the right to argue that this Court should sentence the Defendant to a variant sentence outside of the advisory guidelines range determined by the Court. This Office and the Defendant stipulate and agree that if either party intends to argue, pursuant to Title 18, United States Code, Section 3553(a), that the sentence in this case should fall outside of the advisory guidelines range based on any factor, that party will notify opposing counsel at least 14 days in advance of sentencing of the facts or issues the party intends to raise. If the party seeking the non-guideline sentence fails to provide timely notice of the intent to argue for a sentence outside the advisory guidelines range, that party will withdraw the 3553(a) arguments or consent to a continuance of the sentencing date.

## Obligations of the United States Attorney's Office

13. At the time of sentencing, the United States Attorney's Office will recommend a reasonable sentence, giving due consideration to the advisory U.S.S.G. range, and a reasonable period of supervised release.

14. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

    b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

    d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

16. The Defendant agrees not to commit any offense in violation of federal, state or local law between the date of this agreement and sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under USSG §3C1.1, (ii) fails to accept personal responsibility for the offense conduct in this case by failing to acknowledge guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw the Defendant's guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

17. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulations set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulations, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw the Defendant's guilty plea, and will remain bound to fulfill all of the Defendant's obligations under this agreement. The Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

18. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those


set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: Zachary A. Myers
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

1/15/15
Date

Jonathan M. Sutton

I am Jonathan M. Sutton's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

1/15/2015
Date

Pat M. Woodward, Jr., Esq.

## EXHIBIT A
## STIPULATED FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Jonathan M. Sutton ("SUTTON") is a resident of Maryland. SUTTON and Daniel P. Welch ("WELCH") have known each other since they were small children. As of January 29, 2011, SUTTON was aware that WELCH had been convicted of multiple felony offenses, and as a consequence, was prohibited from purchasing or possessing firearms.

### I. Three Firearms Purchased from Chesapeake Guns, Inc. (January 29, 2011)

On January 29, 2011, SUTTON and WELCH went to Chesapeake Guns, Inc., a federally licensed firearms dealer located at 200 Island Plaza Ct, Stevensville MD 21666. On that day, SUTTON completed paperwork to purchase the following firearms:

| Make | Model | Serial No. |
|---|---|---|
| Smith & Wesson | MP5-22 | DTU5018 |
| Mossberg | Persuada 500 | T675256 |
| Century Arms | SKS | RB4713-1960 |

In connection with this purchase, SUTTON completed an ATF Federal Form 4473 (Firearms Transaction Record Part I - Over-the-Counter) ("Form 4473") stating that he was the actual buyer of the firearms, and that he was not acquiring the firearms on behalf of another person. SUTTON's statement on the Form 4473 for these firearms was false, because SUTTON knew that he was in fact purchasing those firearms on behalf of WELCH. On February 1, 2011, Chesapeake Guns, Inc., transferred the three firearms to SUTTON. That day, or soon thereafter, SUTTON transferred the three firearms to WELCH.

### II. Firearm Purchased from Chesapeake Guns, Inc. (February 11, 2011)

On February 11, 2011, SUTTON completed the paperwork to purchase the following firearm from Chesapeake Guns, Inc.

| Make | Model | Serial No. |
|---|---|---|
| Marlin | 917V | 91656188 |

In connection with this purchase, SUTTON completed a Form 4473 stating that he was the actual buyer of the firearm, and that he was not acquiring the firearm on behalf of another person. On February 12, 2011, SUTTON and WELCH travelled to Chesapeake Guns, Inc., to retrieve the firearm. That day, Chesapeake Guns, Inc., transferred the firearm to SUTTON. That day, or soon thereafter, SUTTON left the firearm in WELCH's possession, custody or control.

1

### III. Firearms Acquired from Private Individuals (2012)

At some time in 2012, SUTTON acquired the following firearms from private individuals:

| Make | Model | Serial No. |
|---|---|---|
| Remington Arms | 597 (.22) | 2935495M |
| Ruger | Single Six (.22) | 180478 |

At some time in 2012, SUTTON left these firearms in WELCH's possession, custody or control.

None of the six firearms SUTTON provided to WELCH were manufactured in Maryland, and each of them travelled in interstate or foreign commerce.

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

1/15/15
Date

_____
Jonathan M. Sutton

2